IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Lori D.,[1]

        Plaintiff,                                    Civ. No. 6:19-cv-519-MC

       v.                                        OPINION AND ORDER

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

MCSHANE, Judge:

      Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On October 1, 2015, Plaintiff filed an application for benefits, alleging disability as of January 30, 2013. Tr. 13.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act.[3] Tr. 13-23. Plaintiff argues the ALJ erred in finding her less-than fully credible, in weighing the medical and other source opinions, and in rejecting certain third-party evidence. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.
[3] At the hearing, the ALJ granted Plaintiff's request to amend the alleged onset date to January 7, 2015.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, psoriatic arthritis, osteopenia, and fibromyalgia. Tr. 15. The ALJ concluded Plaintiff had the RFC to perform light work with the following relevant limitations: she is limited to occasionally climbing, stooping, crawling, and overhead reaching with upper extremities. Tr. 17. Plaintiff argues the ALJ erred in not capturing the full extent of her limitations, in finding her less-than fully credible as to the extent of her limitations, in weighing the conflicting medical (and other source) opinions, and in rejecting certain evidence from Plaintiff's friend and boyfriend. The Court disagrees.

1. **The ALJ's Weighing of Conflicting Medical Opinions**

Plaintiff argues the ALJ erred in weighing the medical opinions. Specifically, Plaintiff claims the ALJ erred in giving greater weight to the opinion of the examining physician over the opinions of several treating physicians (and the opinion of Plaintiff's physical therapist).

When faced with conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such specific and legitimate reason to reject a treating doctor's opinion is if there is an incongruity between it and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's

3 – OPINION AND ORDER

opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ gave great weight to the opinion of Dr. Henderson, who examined Plaintiff in January 2016. Dr. Henderson performed a Comprehensive Musculoskeletal Examination related to Plaintiff's hand malformation, arthritis, degenerative disc disease, and fibromyalgia. Tr. 709. In detailing Dr. Henderson's examination and opinion, the ALJ stated:

> I have given great weight to the opinion of Dr. Henderson. Dr. Henderson opined the claimant had no restrictions in fine and gross motor activities. These findings are consistent with his observations and formal testing. The claimant's left hand had only mild diagnostic findings. The claimant was observed using her hands to take off her socks and shoes without any difficulty. She was able to make a fist and open her hand without any difficulty. Her grip displayed full strength. Even after a minor right small finger fixation surgery, her hand returned to rather normal functioning within a few months. These findings are also consistent with her reported daily activities. As previously discussed, she can cook, dust, mop, clean dishes, and do laundry. Furthermore, she has been able to maintain the cosmetic appearance of her hands and fingers. These activities indicate she has good usage of both hands. Given this, I have assigned great weight to the opinion of Dr. Henderson.

Tr. 21 (internal citations omitted).[4]

In contrast, the ALJ gave some weight to the opinion of Dr. Hanington, and little weight to the opinions of Dr. Lemee and Dr. Bright. Tr. 21-22. Dr. Hanington treated Plaintiff for a broken finger and ulnar neuropathy. In March 2015, Dr. Hanington filled out a physical limitations form. Tr. 498. On that form, Dr. Hanington diagnosed Plaintiff with Right cubital tunnel syndrome. Dr. Hanington opined Plaintiff had "No limit" in her ability to sit, stand, walk, reach, bend/twist, kneel, or climb. Tr. 498. The only limitation Dr. Hanington offered was his opinion that Plaintiff was limited to 2-4 hours each workday of handling/fingering/feeling. Tr. 498. In weighing Dr. Hanington's opinion, the ALJ wrote:

---

[4] The ALJ also gave great weight to the reviewing doctors, who opined Plaintiff could perform light work, provided that Plaintiff only occasionally reach overhead. Tr. 21.

4 – OPINION AND ORDER

> I have given some weight to the opinion of Dr. Hanington. Dr. Hanington opined the claimant had no exertional limitations. However, he stated the claimant could only handle, finger and feel two to four hours in an eight-hour workday. Though I generally agree the claimant is not limited in standing and walking, I have found no objective evidence to warrant any further manipulative limitations in handling, fingering, or feeling. As previously discussed, the claimant had been shown to have normal fine and gross manipulation. An x-ray of the claimant's left hand revealed mild osteoarthritic degenerative findings for her age without acute abnormality. Even after minor right finger fixation surgery, her hands and fingers returned to rather normal functioning. Given this, I have assigned some weight to the opinion of Dr. Hanington.

Tr. 21-22 (internal citations omitted).

These specific and legitimate reasons are supported by substantial evidence in the record. Two months before Dr. Hanington provided his opinion, Dr. Henderson examined Plaintiff. At that examination, Plaintiff reported her psoriatic arthritis "pain is constant, sharp and involves the hands, wrists, shoulders, back, hips, knees, ankles and feet. There is swelling and stiffness. It can be hard to grip objects and may drop objects without warning." Tr. 709. Dr. Henderson reported "Gross and fine motor activity of both hands is completely normal. Hand function was normal based on clinical observation and formal testing. She was able to make a fist without any difficulty and open the hands without any difficulty. She is able to grip with full strength bilaterally." Tr. 711. Dr. Henderson provided the following assessment:

> Hand malformation: There is no hand malformation. I did see the progress notes w[h]ere this was described and it appears to be selected from a drop-down menu. She describes in the history what sounds possibly like dactylitis. Based on her spontaneous movements and formal testing, she has no restrictions regarding fine motor and gross motor activity of both hands. Due to the lack of findings, cannot comment on her ability to perform tasks over prolonged periods.

Tr. 711.

The ALJ reasonably concluded that Dr. Henderson's opinion—based on "clinical observation and formal testing"—that Plaintiff had no fine motor restrictions was entitled to

5 – OPINION AND ORDER

more weight than Dr. Hanington's opinion limiting Plaintiff to 2-4 hours of handling/fingering/feeling each workday.[5]

Dr. Bright treated Plaintiff for psoriatic arthritis. The ALJ detailed the weight provided to Dr. Bright's opinion:

> I have given little weight to the opinion of Dr. Bright. Dr. Bright stated she was unable to assess the claimant's exertional limitations. However, she opined the pain limited the ability to perform a usual eight-hour workday. This statement is inconsistent with Dr. Bright's progress notes indicating the claimant was doing well and documenting her refusing additional medication for joint pain. In addition, Dr. Bright stated Enbrel was preventing swelling and pain. These statements indicating pain symptoms were well controlled is in direct conflict with the doctor's opinion regarding pain. Dr. Bright did not provide a well reasoned rational for her conclusions. Instead, she had previously deferred to the claimant's own subjective reporting. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints. Therefore, I have given little weight to the opinion of Dr. Bright.

Tr. 22 (internal citations omitted).

These reasons are supported by substantial evidence in the record. The ALJ pointed to Dr. Bright's treating note from an October 2015 visit. The note stated Plaintiff "presents for f/u of [psoriatic arthritis]. She reports she is doing well overall in terms of her arthritis-no joint swelling, intermittent joint pain that tends to be dependent on the weather. She denies Swelling in the joints." Tr. 627. Dr. Bright noted Plaintiff's arthritis "is well controlled with Enbrel, but she does report periodic flares of pain in the MTP joints-discussed possibility of adding MTX but she is not ready to start at this point." Tr. 627.

---

[5] The ALJ also noted that, "in general, [Plaintiff's ulnar neuropathy] responded well to conservative treatment and therapy program." Tr. 18. This too is supported by the record. Two months after Dr. Hanington provided his opinion, he treated Plaintiff again. In the "IMPRESSION AND PLAN" from that treating record, Dr. Hanington noted, "She had some flare of ulnar nerve symptoms back in December. It has responded to conservative treatment and a therapy program. Her EMG ensured that she had improvement from postop and preoperative study." Tr. 374.

The ALJ also pointed to a July 2017 treating record where Dr. Bright noted, "She reports she has been doing relatively well in terms of arthritis—enbrel seems to be working to prevent swelling and pain. She does note that her 2nd digit occasionally 'freezes' in place then will be worked out."[6] Tr. 765. Although Plaintiff complained of ongoing back pain, Dr. Bright noted Plaintiff treated that with nightly hot baths. Tr. 765.

The ALJ also determined Dr. Bright appeared to base her opinion largely on Plaintiff's self-reporting. Tr. 22. This too is supported by the record. In March 2015, Dr. Bright filled out a function report. Tr. 727. Dr. Bright opined Plaintiff would "be likely to miss three or more days of work per month due to her conditions." Tr. 727. In the comment to that opinion, Dr. Bright wrote, "by her report—she describes back pain and fibromyalgia as limiting." Tr. 727. As described below, the ALJ provided numerous reasons for finding Plaintiff less-than fully credible as to the extent of her limitations. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (internal quotations omitted).

The ALJ referenced treatment notes indicating that Plaintiff's psoriatic arthritis was "well controlled" with medication and that Plaintiff "is doing well overall in terms of her arthritis." The ALJ noted the fact that Plaintiff denied additional treatment or medication. Based on this, it was reasonable for the ALJ to find that the records "suggest the claimant was functioning fairly well in spite of her [psoriatic arthritis in both shoulders]." Tr. 18. These—along with the reasonable conclusion that Dr. Bright based her opinion largely on Plaintiff's unreliable self-reporting—are legitimate reasons for giving Dr. Dr. Bright's opinion little weight.

Plaintiff next argues the ALJ erred in giving little weight to the opinion of Dr. Lemee, Plaintiff's primary care physician. In March 2015, Dr. Lemee opined that Plaintiff was "unable"

---

[6] An August 2016 dermatology note states, "Has psoriasis and arthritis and is managed well on Enbrel." Tr. 760.

7 – OPINION AND ORDER

to sit, stand, walk, kneel, climb, lift, or carry. Tr. 725. In rejecting Dr. Lemee's opinion, the ALJ concluded:

> Despite such extreme limitations, Dr. Lemee's own physical examinations have been relatively routine and unremarkable and consistently notice no acute distress and without any mention of abnormal clinical findings. Other providers have observed normal gait and stance. She has normal strength in her upper extremities. Therefore, I have given little weight to the opinion of Dr. Lemee.

Tr. 22 (internal citations omitted).

  The ALJ's specific and legitimate reasons are supported by substantial evidence. Plaintiff essentially argues the ALJ erred in giving greater weight to the opinion of the examining physician. As described above, the ALJ did not err in giving Dr. Henderson's opinion great weight. Additionally, the ALJ did not err in pointing to inconsistencies between a physician's treating records and opinion when weighing that opinion. *See Tommasetti*, 533 F.3d at 1041 (noting "incongruity between [a doctor's] Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting" the opinion). The ALJ reasonably concluded Dr. Lemee's treatment notes and findings were inconsistent with her opinion as to Plaintiff's limitations.

  Finally, Plaintiff argues the ALJ erred in giving no weight to the opinion of her physical therapist. The parties agree that Mr. Walbert's opinion is that of an "other source." 20 C.F.R. § 404.1513(d). The ALJ may reject "other source" opinions if the ALJ provides germane reasons for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In April 2015, Mr. Walbert opined Plaintiff was unable to lift or carry any amount of weight. Tr. 497. The ALJ concluded Mr. Walbert's "opinion is inconsistent with his physical therapy progress records. Mr. Walberg states the claimant is unable to lift less than 10 pounds. However, muscle testing of the claimant's upper extremities have been near normal." Tr. 21. This is a germane reason for discounting Mr. Walbert's opinion. The ALJ reasonably concluded that if Plaintiff was in fact

8 – OPINION AND ORDER

unable to lift or carry any amount of weight, she would not consistently demonstrate normal muscle strength in her arms upon examination. Additionally, as described above, Dr. Hanington's treatment notes indicate Plaintiff responded well to physical therapy. Tr. 374.

Here, the ALJ reasonably weighed the conflicting medical opinions and gave greater weight to the examining and State Agency doctors. In the ALJ's view, those opinions were more consistent with the record-as-a-whole. Although Plaintiff argues another interpretation of the record is reasonable—i.e., that certain medical and other source opinions demonstrate she is disabled—that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)).

2. **The ALJ's Credibility Determination**

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a range of factors in assessing credibility[.]" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ pointed to several of the above factors in finding Plaintiff less-than fully credible as to the extent of her limitations:

9 – OPINION AND ORDER

As described above, the ALJ's determination that Plaintiff's symptoms were controlled with medication is supported by substantial evidence in the record. The ALJ also noted that although Dr. Bright offered Plaintiff an alternative treatment for joint pain, Plaintiff declined additional treatment. Tr. 18.

The ALJ noted that although Plaintiff complained of debilitating migraines, she never followed up on a referral to a neurologist. Tr. 16. At the hearing, Plaintiff testified that when she gets migraines, "I'm in bed all day—dark curtains, no noise." Tr. 38. Plaintiff testified that she gets two or three migraines each month, lasting all day. Tr. 45. The ALJ concluded, "The failure to follow recommendations reflects poorly on the consistency of the claimant's testimony and the assertion this condition is as disabling as alleged." Tr. 16.

Plaintiff described symptoms from irritable bowel syndrome, "Any time I have anything to eat or drink, in 5 to 10 minutes, I'm in the bathroom." Tr. 47. She is in the bathroom from 15 to 30 minutes, sometimes an hour. Tr. 47. The ALJ noted that although Plaintiff's physician ordered a colonoscopy for her irritable bowel syndrome, there is no indication Plaintiff ever followed up with a colonoscopy. In weighing a claimant's credibility, an ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273,1284 (9th Cir. 1996).

The ALJ determined Plaintiff's activities were not consistent with her alleged limitations. In a November 2015 function report, Plaintiff stated, "All these together never know how my day will be sometimes can't get out of bed. Sit to[o] long legs go numb—extreme back pain. Can't lift. Hand's don't always work. Squat can't get back up." Tr. 173. Plaintiff stated her symptoms impacted her ability to bathe as she had difficulty getting in and out of the tub. Tr.

175. Plaintiff had difficulty getting up after using the toilet. Tr. 175. Her symptoms limited Plaintiff to taking only short trips. Tr. 177. Plaintiff testified she was unable to work because "I can't sit for long periods of time. My legs go numb and give out." Tr. 37. Plaintiff testified she can sit 15 minutes but "sometimes 30. It kind of depends on the chair because my—it makes my legs go numb." Tr. 39.

The ALJ determined Plaintiff's testimony regarding her limitations was inconsistent with the evidence. During the time period at issue, Plaintiff went car camping, flew to Hawaii, and travelled from Oregon to Arizona. Those are not short trips. Given Plaintiff's testimony of severe limitations, the ALJ's conclusion was a reasonable one. Additionally, in August 2016, over a year after her alleged onset date, Plaintiff's surgeon noted, "I discussed with her that I don't recommend any activity where she could fall for the next month or so. She is going white-water rafting this weekend. We discussed that does give her especially high risk of refracture." Tr. 744. The ALJ's findings that Plaintiff's activities are inconsistent with her testimony is supported by substantial evidence in the record.

The ALJ also found Plaintiff's testimony was inconsistent with the record-as-a-whole. Plaintiff testified she could lift five pounds, or "maybe 10" with two hands. Tr. 38. "I just don't have the strength and the arthritis in my hands, and I have—my shoulders are really bad. So mobility of movement." Tr. 39. Plaintiff testified she could walk "Maybe a block and a half." Tr. 39. Plaintiff needed her son to help her open jars of medication. Tr. 41.

The ALJ reasonably concluded Plaintiff's testimony was inconsistent with the results of Dr. Henderson's examination. Dr. Henderson noted Plaintiff reported her psoriatic arthritis "pain is constant, sharp and involves the hands, wrists, shoulders, back, hips, knees, ankles and feet. There is swelling and stiffness. It can be hard to grip objects and may drop objects without

warning." Tr. 709. Plaintiff reported her "low back is extreme[]ly painful, constant, . . . and can make getting out of bed or off the toilet difficult." Tr. 709. Plaintiff reported that during the examination, her current pain intensity was 8/10. Tr. 710. Objectively, Dr. Henderson noted Plaintiff took off her shoes and socks without difficulty and "She was able to sit comfortably throughout the history and movement patterns during the exam were normal." Tr. 710. "She gets up out of the chair easily and has a normal heel to toe sequence with narrow base. When asked to walk the heels was able to bear weight but stated she was afraid of falling forward. When walking the toes had no difficulty. Tandem walking was completely normal. She was able to squat about one third of the way down. Station is erect and symmetric." Tr. 710. Dr. Henderson reported "Gross and fine motor activity of both hands is completely normal. Hand function was normal based on clinical observation and formal testing. She was able to make a fist without any difficulty and open the hands without any difficulty. She is able to grip with full strength bilaterally." Tr. 711. Dr. Henderson reported, "She describes being stiff after immobility and pain upon standing. However, spontaneous movements were normal today." Tr. 711. The ALJ did not err in contrasting Plaintiff's reports with Dr. Henderson's examination.

To summarize, the ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of her limitations, the ALJ

did not err in giving little weight to Plaintiff's testimony regarding those limitations.[7] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen*, 80 F.3d at 1282).

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.[8]

IT IS SO ORDERED.

DATED this 23rd day of April, 2020.

/s/ Michael J. McShane<br>
Michael McShane<br>
United States District Judge

---

[7] Plaintiff's friend and boyfriend provided third-party function reports that largely mirrored Plaintiff's own allegations regarding her limitations. Because the ALJ's reasons for rejecting Plaintiff's testimony apply equally to the testimony of the third-party reports, the ALJ did not err in giving little weight to those opinions. *Molina*, 674 F.3d at 1122.

[8] Plaintiff argues the ALJ erred in not discussing whether Plaintiff's impairments met or medically equalled listing 14.09D. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff, however, made no effort below to establish that she medically equaled listing 14.09D. Additionally, the ALJ's findings, supported by substantial evidence in the record, indicate Plaintiff did not have marked limitations in performing daily activities. As noted, well after her alleged onset date, Plaintiff felt well enough to go whitewater rafting. Tr. 744.